SCOTT ERIK ASPHAUG, OSB #833674
Acting United States Attorney
District of Oregon
**LEWIS S. BURKHART, OSB #082781**
Assistant United States Attorney
Lewis.Burkhart@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | 3:21-cr-00106-HZ-01 |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **AUMONTAE WAYNE SMITH,** | |
| Defendant. | |

### Introduction

Defendant is a member of the Hoover Criminal Gang caught selling counterfeit Oxycodone pills containing Fentanyl through social media. Agents seized six firearms during a search of his residence and later determined he purchased sixteen firearms associated with seventeen separate shootings.  Based on extensive negotiation, the parties jointly recommend a total sentence of 70 months.

/ / / /

**Factual Background**

A.     **The Offense Conduct**

**Hoover Criminal Gang Background**

Local and federal law enforcement are investigating the Hoover Criminal Gang, or "Hoovers," for their engagement in racketeering activities, including murder, attempted murder, conspiracy to commit murder, robbery, and delivery of controlled substances. (PSR ¶ 20).

Investigators know Defendant to be a Hoover member that goes by the street name of "Tae Tae." Investigators determined his Hoover membership based on interviews, Defendant's possession of gang paraphernalia, Defendant's social media, appearing in photographs among other Hoover members, and being tagged in Hoover members' social media posts. (PSR ¶ 22, 24).

**Drug Distribution**

A confidential human source (CHS) indicated to investigators that Defendant was advertising the sale of narcotics and firearms on social media. (Exhibit 1) (PSR ¶ 24).



An undercover investigator inquired about the purchase of drugs on social media, to which Defendant replied, "Need Any?" The investigator indicated that she did, and Defendant replied, "Ok jus hit me" after. (PSR ¶ 25).

Investigators arranged to purchase ten Oxycodone pills from Defendant through the social media. Law enforcement conducted a traffic stop on Defendant's vehicle before Defendant arrived at the arranged purchase location. The vehicle was searched, and investigators located a loaded .40 caliber Glock 27 pistol with an extended magazine, and ten pills on the driver's side floorboard. Defendant's cell phone was also seized during the search. (PSR ¶ 26). Defendant was not arrested.

A search of the cell phone revealed messages between Defendant and co-conspirators discussing the sale and purchase of counterfeit Oxycodone pills and firearms. Investigators calculated through a historical analysis of the cell phone's communications that Defendant sold over 400 pills containing fentanyl. If each of those pills contained the same net amount of fentanyl as those seized from Defendant's vehicle, 400 pills would contain over 40 net grams of fentanyl. (PSR ¶ 27 - 28).

**Firearm Purchases and Related Cases**

Despite being contacted by the FBI, Defendant continued selling controlled substances on social media after the traffic stop. (Exhibit 2 and 3). When Defendant's residence was later searched, investigators seized several firearms, Hoover memorabilia, and framed photographs of Hoover members who had been killed during gang violence. (Exhibit 4-7) (PSR ¶ 28). Investigators, including the ATF, obtained and reviewed the historical records of Defendant's firearms purchases which showed he had purchased at least sixteen firearms in the past year, and

a records check and ballistic testing revealed that six of those firearms were associated with at least seventeen Portland area shootings in 2020. (Exhibit 8) (PSR ¶ 29).











### B. The Plea and Plea Agreement

On May 18, 2021, Defendant pleaded guilty to Counts 2 and 3 of the Indictment which charged Possession with Intent to Distribute Fentanyl in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C) and Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

### C. Guideline Computations

**Count 2**

Per the plea agreement, the parties stipulated to the following adjusted offense level. (PSR ¶ 34). The parties did not agree to a specific reduction for resolving the case prior to the first trial date and not litigating any motions. However, the joint recommendation of 70 months is based on the Government recommending 10 months on Count 2 and a consecutive sentence of 60 months on Count 3.

| Count 2: 21 USC § 841(a)(1) – Possession with Intent to Distribute | | |
|---|---|---|
| USSG § 2D1.1 | Base Offense Level | 22 |
| USSG § 3D1.4 | Acceptance of Responsibility | -3 |
| | **Adjusted Offense Level** | **19** |

**Count 3**

Defendant pleaded guilty to a crime in violation of section 924(c) of Title 18 of the United States Code, for which the guideline sentence is the minimum term of imprisonment required by statute. The statutory mandatory minimum sentence for Possession of a Firearm in Furtherance of a Drug Trafficking Crime under 18 U.S.C. § 924(c)(1)(A)(i) is 5 years imprisonment.

**D. Relevant Criminal History**

Defendant has no adult criminal convictions, so the total criminal history score is zero. This establishes a criminal history category of I. (PSR ¶ 49, 50).

**E. Forfeiture and Abandonment**

Defendant agreed to forfeit all rights, title and interest in all assets, which are subject to forfeiture including:

- $18,919 U.S. currency; and
- a Glock 27 .40 caliber pistol with an extended magazine and associated ammunition, serial number LHM996;

which Defendant admits constitute the proceeds of the criminal conspiracy, defendant's criminal activity and/or were used to facilitate defendant's criminal activity.

Defendant also agreed to abandon all right, title, and interest in the property below, and waives his right to notice of any abandonment proceedings as to:

**Government's Sentencing Memorandum**                          **Page 6**

- Glock .40 Cal. magazine with live rounds of ammunition;

- DPMS Panther Arms MOD AR-15 rifle CAL:.223 SN: FFH218631;

- Panther Arms magazine loaded with live rounds of ammunition;

- Romarm Micro Draco rifle CAL: 7.62 SN: PMD-21302-20-ROA;

- Roman Draco magazine loaded with live rounds of ammunition;

- Glock model 21 pistol CAL: .45 SN: BCMX693;

- Glock magazine loaded with ammunition

- Glock model 30 pistol CAL: .45 SN: BBUP240;

- Glock magazine loaded with ammunition;

- Taurus PT92 AFS pistol CAL: 9mm SN: TNK0953;

- Check-Mate IND Taurus magazine loaded with live ammunition; and all other associated ammunition and accessories;

in order that appropriate disposition may be made thereof by the Federal Bureau of Investigation.

### F. Government's Recommended Sentence

Defendant pled guilty to his involvement in the two most lethal things affecting the Portland area: firearms and fentanyl. The parties came to an agreement to a joint recommendation of 70 months imprisonment, which is an appropriate balance of the aggravating and mitigating factors involved. Specifically, this recommendation contemplates Defendant's lack of a criminal history, young age and his willingness to quickly resolve the case. The case is aggravated by Defendant's membership in a violent criminal gang and continued involvement in drug trafficking and firearms after being contacted by the FBI. Further, Defendant's involvement with purchasing sixteen firearms involved in seventeen separate shootings is

**Government's Sentencing Memorandum**                                         **Page 7**

incredibly alarming.  At a minimum, Defendant was trafficking firearms to violent individuals. At worst, Defendant participated in these shootings.  The government does not have any other evidence beyond the firearm ballistics to connect Defendant to those seventeen shootings.

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005).  The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. § 3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). The guideline serves as "the starting point and the initial benchmark" in every sentencing proceeding and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Gall v. United States*, 552 U.S. 38, 49 (2007); *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestone" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 569 U.S. 530, 531 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

The government submits that under the facts of this case, a sentence of 70 months of imprisonment appropriately reflects the seriousness of the offense, will promote respect for the law, and will provide just punishment for Defendant as a result of his offense. Such a sentence would recognize Defendant's willingness to resolve the case without litigation but would still provide adequate deterrence to criminal conduct, protect the public, and meet the statutory mandatory minimum sentence for Count 3. A sentence of 70 months of imprisonment and a $100 special assessment for each count satisfies the requirement of 18 U.S.C. § 3553(a) as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

**Conclusion**

Based on the foregoing, the parties jointly recommend the Court impose a 70-month sentence.

Dated: August 4, 2021

Respectfully submitted,

SCOTT ERIK ASPHAUG
Acting United States Attorney


*/s/ Lewis S. Burkhart*
LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney